Victor J. SAPIENZA,
Employee/Respondent,

v.

DEACONESS HOSPITAL,
Employer/Appellant,

and

Argonaut Insurance Company,
Insurer/Appellant.

No. 52193.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 13, 1987.

James B. Kennedy, St. Louis, for employer/appellant.

John D. Schneider, St. Louis, for employer/respondent.

GRIMM, Judge.

This is a workers' compensation case wherein the employer and insurer appeal. They raise two issues. First, that an award of 400 weeks for permanent partial disability is excessive as a matter of law because the employee returned to his former job and is working full time. We disagree, because the continued ability of an employee to work does not prevent an award of permanent partial disability so long as there is an injury that causes partial loss of bodily function which impairs

the efficiency of the employee in the ordinary pursuits of life. *Komosa v. Monsanto Chemical Co.,* 317 S.W.2d 396, 400 (Mo. 1958). Second, that the method initially utilized in determining the amount "was contrary to the law" because values were assigned for scheduled injuries, for unscheduled injuries, and a multiplicity factor, rather than treating all of the injuries together and basing the award on a percentage of the body as a whole. We disagree, because the Labor and Industrial Relations Commission has discretion as to the amount of the award and as to how it is calculated, and we can only review to see if there is sufficient competent evidence to support the award under § 287.490 (RSMo. 1986). *Haggard v. Synder Construction Company,* 479 S.W.2d 142, 145 (Mo.App. 1972). We affirm.

A brief review of the facts reflects that on April 27, 1979, Sapienza, an electrician at Deaconess Hospital, and Bill Hudson were instructed by their supervisor to install a new electrical switch. After checking the old switch to be replaced, Sapienza objected to his supervisor about changing the switch while the electrical power was still on. However, the supervisor told Sapienza to either leave the job or stay there and finish. Hudson, with Sapienza three feet behind him holding a flashlight, attempted to install the switch. An electrical explosion occurred. A ball of fire came across Sapienza's hands and shoulder, throwing him against a switch gear. His clothing and the flashlight caught fire.

On his way to the emergency room at Deaconess Hospital, Sapienza had to open a door. As he turned the doorknob, tissues from his hand came off on the doorknob. After his initial hospitalization at Deaconess, he was transferred to the burn unit at St. John's Mercy Hospital. He had second and third degree burns on his forehead, ear lobes, nose, lips, and chin. His flesh on both hands was exposed to the bone. There were extensive burns on both arms and shoulders, as well as on his chest. Sapienza remained at St. John's for approximately 30 days receiving treatment for his multiple injuries.

Sapienza was later readmitted to St. John's for extensive skin grafts taken from the left thigh. He had three layers of flesh removed from the top of the thigh down to the knee on both sides of his left leg. As a result of this procedure, Sapienza has extensive scars on his left hip and thigh. Later, Sapienza also required psychiatric hospitalization.

At the time of the last hearing, December 28, 1984, Sapienza still required physical therapy two to three times a week, received psychiatric counseling every four to six weeks, and took a variety of medicines. He is able to work full time, but has some physical limitations.

At that hearing, Sapienza testified about his physical condition. Sapienza stated that he now has limited movement of his left arm and left hand in that he cannot raise his left arm up to his shoulder nor can he raise his hand up to a 45 degree angle. He also stated that he lost a substantial amount of muscle in his left arm and has burn scarring in the shoulder area which causes him constant pain; he has to wear Jobst gloves on his hands because the skin is very thin and he has open fissures which will bleed if he goes without the gloves for more than 30 minutes; he has limited movement of his right hand in that he cannot make a fist, lay his palms flat on a surface, nor reach into the palm of his hands with his fingers; he cannot fully open his mouth because of scar tissue; he wears a beard in order to cover up the scars and because shaving cuts the scars open; he had several skin transplants to his chest and, as a result, has constant pain across his chest; and because of the skin grafts, he has aching and pulling sensations in his left hip and thigh.

Also, at that hearing, Sapienza explained that he has had episodes of depression since the accident, especially when he comes into contact with his supervisor, whom he feels is responsible for his injuries; he was hospitalized once for high depression and suicidal tendencies; and he considers himself ugly, experiences rage towards himself and has lost, to a degree,

the ability to handle interpersonal relationships because of his decreased self-esteem.

Following hearings on December 2, 1983, and December 28, 1984, the administrative law judge held: (1) the employer and insurer were responsible for future medical and psychiatric treatment; (2) for disfigurement under § 287.190.4 (RSMo. 1986), awarded Sapienza $2,000.00; (3) for scheduled losses under § 287.190.1 (RSMo. 1986), awarded him 127.8 weeks; and (4) for unscheduled losses under § 287.190.3 (RSMo. 1986), awarded him 281.96 weeks. Although the weeks awarded totaled 409.75, the judge reduced it to 400 weeks, apparently on the theory that 400 weeks is the maximum set by § 287.190.3 (RSMo. 1986). The award made by the administrative law judge was affirmed by the Labor and Industrial Relations Commission and the Circuit Court.

On appeal to this court, the employer and the insurer challenge the award on the specific ground that "there was not sufficient competent evidence in the record to warrant the making of the award." Section 287.490.1(4) (RSMo. 1986). Only when the Commission's award is not supported by substantial evidence or is clearly contrary to the overwhelming weight of the evidence do we disturb it. *Page v. Green,* 686 S.W.2d 528, 530 (Mo.App.1985). Generally, in passing on the sufficiency of the evidence, we view the record in the light most favorable to the findings, and disregard any evidence which might support a finding different than that of the Commission, even though a finding of the Commission to the contrary would also have been supported by the evidence. *Petersen v. Central Pattern Co.,* 562 S.W.2d 153, 155–56 (Mo.App.1978).

■ Appellant's first point is that the award of 400 weeks for permanent partial disability was excessive as a matter of law because the employee returned to work. We disagree, because permanent partial disability can be awarded notwithstanding the fact that the employee returned to work if the employee's injury impaired his efficiency in the ordinary pursuits of life. *Komosa v. Monsanto Chemical Co.,* 317 S.W.2d 396, 400 (Mo.1958). In *Komosa,* the employee suffered a back injury in the course of his employment, but continued to work without any lost wages. In approving an award for permanent partial disability, the court said:

> If it appears that the injury has caused a partial loss of bodily function, which impairs the efficiency of the employee in the ordinary pursuits of life, recovery may be had under § 287.190 for permanent partial disability, notwithstanding the fact that the employee injured has suffered no loss of time from work and no immediate loss of earning power.

Thus, even if an employee is working at the same wage, he is entitled to compensation if, from a consideration of the whole record, he sustained an injury that caused a partial loss of bodily function which impairs the efficiency of the person in the ordinary pursuits of life. *Gordon v. Chevrolet–Shell Division of Gen. M. Corp.,* 269 S.W.2d 163, 170 (Mo.App.1954); *Betz v. Columbia Tel. Co.,* 224 Mo.App. 1004, 24 S.W.2d 224 (1930). Here there was ample evidence to meet this test, because Sapienza was impaired in the ordinary pursuits of life due to his many injuries. Thus, the award of 400 weeks of permanent partial disability is not excessive as a matter of law. Appellant's first point is denied.

■ Appellant's second point is that the method utilized in determining the amount of the award "was contrary to the law". We disagree, because the Labor and Industrial Relations Commission has discretion as to the amount of the award and how it is to be calculated. Also, § 287.490.1(4) (RSMo. 1986), restricts our review to determine if there is sufficient competent evidence to support the award. *Haggard v. Synder Construction Company,* 479 S.W.2d 142, 145 (Mo.App.1972). It is the duty of the Commission to "weigh that evidence as well as all the other testimony and reach its *own* conclusion as to the percentage of the disability suffered." *Franklin v. St. Louis Independent Packing Company,* 360 S.W.2d 350, 355 (Mo. App.1962).

■ Upon examination of the record, we find that there was sufficient testimony to support the award of 40% permanent partial disability for the left arm, 20% permanent partial disability for the right hand at the wrist, 20% permanent partial disability of the body as a whole referable to the chest and neck, 5% permanent partial disability of the body as a whole for skin grafts, 25% permanent partial disability for psychiatric injury and an additional 25% for multiplicity of injury. Thus, from the evidence presented and because of the large amount of discretion vested in the Commission in determining final awards, we do not find that the method utilized by the Commission is "contrary to law", and thus the award must be upheld.

The employer refers us to *Russell v. Kansas City Public Service Company*, 276 S.W.2d 644 (Mo.App.1955), which is similar to the present case in that it deals with both scheduled and unscheduled injuries. Russell sustained injuries to both of his hands, which were scheduled losses, and to his back, which is an unscheduled loss. The Commission's award was based on a percentage of the body as a whole even though testimony was given to the specific injuries. *Id.* at 649. Russell illustrates the discretion which the Commission may use in making an award, acknowledging that "... the Commission in its discretion, fixes the disability." *Id.* at 648.

This premise is also recognized by *Chapman v. Raftery*, 174 S.W.2d 352 (Mo.App. 1943). There, the court stated that where there are multiple injuries from one accident, the compensable period

> "is *not necessarily* to be fixed with regard for the relation which each and every one of such multiple injuries may bear to some one of the specific injuries mentioned in the statutory schedule, but that instead, the commission, in such a case, *may* properly fix the period in its relation to the maximum period of 400 weeks, considered from the standpoint of the percentage of disability in the normal functions of the injured man himself."
> *Id.* at 354. (emphasis added)

Chapman, using the words "not necessarily" and "may", illustrates that a particular method is not mandated, but rather the Commission has a choice as to how the award is calculated. The award in *Chapman* was affirmed as being supported by sufficient competent evidence, again recognizing that the Commission's discretion is broad.

Although cited by the employer, *Teel v. F. Burkart Mfg. Company*, 271 S.W.2d 259 (Mo.App.1954) reemphasizes the weight given to the Commission's award. Acknowledging that the Commission: (1) is not bound to believe any testimony presented; and (2) can reject all or any part of the testimony, the court, quoting from *Sams v. Hayes Adhesive Co.*, 260 S.W.2d 815 (Mo. App.1953), pointed out that it is "the province of the Commission to resolve conflicts in the evidence and give probative value to only that part which has the ring of truth in it." *Id.* at 269.

*Teel* was decided under a new version of § 287.190, rather than a predecessor statute in effect when the previously mentioned cases were decided. In 1949, the legislature separated the scheduled loss provision from the other injury or unscheduled loss provision. Also, in 1949, the scheduled loss provision was changed so that it referred not just to the loss or complete severance of a limb, but to also deal with the proportionate loss of a limb or any multiple injury. As a result, under the 1949 statute, there are fewer injuries that fall into the unscheduled or "other injury" provision. Subsequent cases continue to recognize this principle and give deference to the Commission in arriving at an appropriate award. *Carenza v. Vulcan–Cincinnati Inc.*, 368 S.W.2d 507 (Mo. App.1963); *Fogelsong v. Banquet Foods Corp.*, 526 S.W.2d 886 (Mo.App.1975).

Upon examination of the cases cited by the employer, we conclude that the Commission has discretion as to the method used in reaching a final award. Here we find that the amount of the final award was supported by substantial evidence, and the method utilized in reaching this award is within the discretion vested in the Com-

mission. Appellant's second point is therefore denied.

The judgment of the circuit court is affirmed.

SIMON, P.J., and CRANDALL, J., concur.