Catherine CHAMBLISS,
Appellant–Claimant,

v.

LUTHERAN MEDICAL CENTER,
Respondent–Movant.

No. 59864.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 3, 1991.

C. Dennis Barbour, Florissant, for appellant-claimant.

Kortenhof & Ely, P.C., W.J. Glaser, St. Louis, for respondent-movant.

PUDLOWSKI, Presiding Judge.

Appellant–Claimant, [hereinafter claimant], appealed the Administrative Law Judge's ruling in her workers' compensation benefits claim to The Labor and Industrial Relations Commission. The Labor and Industrial Relations Commission adopted as its own the decision of the Ad-

ministrative Law Judge and claimant appeals this decision.

Claimant alleges on appeal that the decision of the Labor and Industrial Relations Commission was erroneous because: (1) it failed to award certain medical expenses; (2) it failed to award future medical; (3) its determination of the percentages of claimant's permanent partial disability were too low; (4) it failed to award permanent partial disability for injuries to claimant's neck and head; (5) it failed to include a multiplicity factor; and, (6) the decision was not ripe for final adjudication. We affirm.

On February 21, 1986, the claimant, Catherine Chambliss, slipped and fell on the ice as she approached the entrance way of Lutheran Medical Center. Claimant was employed at the hospital and at the time of her fall she landed on her buttocks and then recoiled striking her head. Later that day the claimant went to the emergency room located at the medical center. The parties agreed that claimant's injuries arose out of and in the course of her employment and that the employer had notice of the injury.

The employer-insurer paid for the claimant's expenses at the emergency room and in addition paid for her to see Dr. Jesus Arcelona, a house doctor at Lutheran, Dr. Robert Kuhlman, an orthopedic surgeon, and Dr. Patrick Hogan, a neurologist. Unsatisfied with her recovery the claimant went to see Dr. Gregory Lewis, a chiropractor. Dr. Lewis referred the claimant to Dr. John Steuterman, an oral surgeon, Dr. Edward Eyerman, a neurologist, and Dr. Paul Young, a neurosurgeon. The visits to Dr. Lewis and the doctors he referred the claimant to were not authorized by the employer. The claimant also saw Dr. Harold Walters, a general surgeon hired by the employer, and Dr. James McFadden, a general surgeon retained by claimant in preparation of this case.

At the emergency room x-rays were taken of the claimant's left elbow, skull and coccyx. X-rays of the left elbow and head were negative. X-rays of the coccyx showed it was angled anteriorly although the x-rays showed that the osseous structures of the sacrum and coccyx were normal. The claimant was discharged from the emergency room with a diagnosis of multiple contusions of the body. She was given a head injury instruction sheet, a prescription for Tylenol and she was told to see Dr. Arcelona for follow up treatment.

Claimant first saw Dr. Arcelona on February 25, 1986, and his report indicates he prescribed further medication and applied heat to the affected areas. Claimant saw Dr. Arcelona again on June 28, 1986, and she continued to complain of pain in the coccyx area. Following the June 28 visit the claimant was referred to Dr. Kuhlman.

Claimant first saw Dr. Kuhlman on August 1, 1986, and was admitted to the hospital by him on August 18, 1986. Dr. Kuhlman discharged claimant from the hospital for further conservative treatment and she was to return to his office in two weeks. Claimant did not see Dr. Kuhlman again until July 16, 1987, and after his examination he concluded that claimant had "a small degree of diffuse degenerative changes throughout the lumbar spine" and "tenderness about the tip of the tailbone." Dr. Kuhlman rated claimant's disability as 5% permanent partial disability of the person as a whole as a result of persisting subjective complaints. He also stated that "she probably has another 5% permanent partial disability of the person as a whole related to pre-existing degenerative changes throughout the lumbar spine which have not been modified by the alleged incident." Although Dr. Kuhlman found claimant had no need for further treatment he saw her again on September 8, 1987.

After examining the claimant Dr. Kuhlman found she was unchanged from the last time he saw her. On March 21, 1988, Dr. Kuhlman wrote that he saw "no reasonable indication for additional physical therapy treatment and certainly no benefit could be derived from any form of chiropractic manipulation, particularly to the tailbone area." Dr. Kuhlman repeated that he felt the claimant had reached an end stage in her recuperation.

The claimant saw Dr. Hogan, a neurologist, on two occasions; September 30, 1987 and January 29, 1988. Dr. Hogan stated that he found "no neurological disease or disorder of the central or peripheral nervous system and no evidence of organic disorder." Dr. Hogan was the last physician the claimant saw who was authorized by the employer. On March 30, 1988, claimant began seeing Dr. Lewis, a chiropractor.

Claimant saw Dr. Lewis until October of 1988 and he testified at the hearing before the Administrative Law Judge. Dr. Lewis was of the opinion that the claimant's lower back injury, neck injury and temporomandibular joint disease (TMJ) were due to the accident in February of 1986. Dr. Lewis found the claimant's permanent partial disability (PPD) of the body as a whole due to her low back injury as being 40%. He found her PPD due to cervical spine injury as 15% and her PPD due to her TMJ as being 25%. In addition he recommended a 10% loading factor because of multiple injuries. Dr. Lewis' bill totaled $1,991.50 of which $866.00 was due on the TMJ. Dr. Lewis referred the claimant to Dr. Steuterman, an oral surgeon, because of her TMJ.

Dr. Steuterman saw the claimant on May 19, 1988, and on September 22, 1988. Dr. Steuterman stated that a fall on the ice with a subsequent blow to the head can reflect a whiplash injury to the TMJ. The doctor went on to state that claimant's symptoms were reflective of such an injury. Dr. Steuterman, however, did not believe surgery would be necessary. Dr. Steuterman's bill came to $450.00.

Dr. Lewis also referred the claimant to Dr. Eyerman, a neurologist, and Dr. Young, a neurosurgeon. Dr. Eyerman concluded that the claimant had an "upper level cervical sprain, with some element of an occipital neuralgia on the left." He was not clear as to what extent the TMJ was contributing to her headaches. He prescribed continued conservative care and exercise. Dr. Eyerman's bill was for $125.00. Dr. Young diagnosed the claimant as having spondylolysis and a slightly weakened disc and recommended that she continue her chiropractic treatment and do some exercises. Dr. Young's bill was for $131.00.

In preparation for the workers' compensation hearing the claimant saw Dr. McFadden, a general surgeon, at the request of her attorney. Dr. McFadden diagnosed the claimant as having severe contusions, sprains of the neck and back, TMJ, herniated discs and stress anxiety. He found that claimant had a 60% PPD of the person as a whole secondary to her lower back problems, 35% PPD of the person as a whole due to the head, neck and jaw complaints, and a 15% PPD rating because of stress anxiety and depression.

The claimant also saw Dr. Walters, a general surgeon, at the request of the employer in preparation of the hearing. Dr. Walters was of the opinion that the TMJ was due to malocclusion rather than the fall. He ruled the PPD due to TMJ as being 2% to 3%. With regard to the back, Dr. Walters rates her PPD as 5% of the body as a whole attributable to the degenerative arthritis which he says was not aggravated by this accident. Furthermore, the doctor found that claimant had a 2% to 3% PPD based upon subjective complaints. He felt there was no need for further treatment.

After reviewing the evidence at trial and the various medical reports the Administrative Law Judge found that the claimant's injuries to her low back, coccyx and the symptoms in her temporomandibular joints were causally connected to the accident in February of 1986. The judge found the PPD to the body as a whole referable to the low back as 7½, the PPD as a whole referable to the coccyx as 5% and the PPD to the body as a whole referable to the jaw for the TMJ as 5%. The employer was to pay Dr. Steuterman's bill of $450.00, however, the bills of Dr. Lewis, Dr. Eyerman, Dr. Young and St. Louis Radiology were all found to be unauthorized medical care and was undertaken at the expense of the claimant. Finally, the judge found that no future medical care need be provided by the employer.

 The four exclusive grounds for setting aside a decision of the commission

are: (1) that the commission acted without or in excess of its power; (2) that the award was procured by fraud; (3) that the facts found by the commission do not support the award; and, (4) that there was not sufficient competent evidence in the record to warrant the making of the award. § 287.495 RSMo 1986. If conflicting evidence is presented the choice lies with the commission and is binding on this court. *Low v. ACF Industries*, 772 S.W.2d 904, 906 (Mo.App.1989). This court may not substitute its judgment upon issues of fact for the judgment of the commission. *Id.* Generally, when passing on the sufficiency of the evidence, we must view the record in the light most favorable to the findings. *Id.* Therefore, we disregard any evidence supporting a finding different than the commission's, even though the evidence would have supported a finding to the contrary. *Id.*

■ The claimant's first point on appeal alleges the commission erred in not awarding the claimant's costs of treatment by Dr. Lewis, Dr. Eyerman, Dr. Young and St. Louis Radiology. In its decision the commission found that injuries to the claimant's back, coccyx and TMJ were casually connected to the accident. The commission awarded claimant her expenses for treatment given by Dr. Steuterman who treated the claimant for TMJ. However, the commission found that treatment given by Dr. Lewis, Dr. Eyerman, Dr. Young and St. Louis Radiology was unauthorized medical care and at the expense of claimant as provided in § 287.140(1) RSMo.[1] In seeking these expenses the claimant argues, on this point and throughout this appeal, that the treatment provided by the employer was inadequate as to the back injuries and that no care at all was provided by the employer for injuries to the head, neck and TMJ.

The claimant's arguments concerning inadequate care for her back are without merit. The claimant alleges that the care provided by the employer did not cure her back problems and therefore she was forced to seek other medical attention. However, the evidence shows the employer provided treatment for claimant's back and these doctors did not indicate any need for further treatment. Dr. Kuhlman specifically noted that claimant had reached an end stage in her recovery and stated chiropractic care would not be helpful to her. The claimant, nevertheless, went to see Dr. Lewis, a chiropractor, who referred her to Dr. Steuterman, Dr. Young and Dr. Eyerman. In that there is conflicting evidence as to the necessity of this treatment the decision of the commission, as stated above, is binding on this court. Thus, we uphold the decision of the commission which found the treatment provided for claimant's back injury by Dr. Lewis, Dr. Eyerman and Dr. Young was unauthorized medical care and undertaken at the expense of the claimant.

■ The claimant's allegation that she should be compensated for the treatment of these doctors because the employer failed to treat her for the injuries to her head and neck is also without merit. The evidence presented to the commission is unclear as to the extent of these injuries, what caused them and whether the claimant ever complained of them to the doctors provided by the employer. When the claimant originally went to the emergency room on the day of the accident she complained of headaches and nausea, however, x-rays taken of the skull were negative. The claimant next went to see Dr. Arcelona and the claimant alleges she complained of headaches and neck pain to him. Dr. Arcelona's records, however, do not indicate any such complaints.

The claimant saw Dr. Kuhlman on several occasions and there is only one reference to headaches and none to any neck injury. The employer also paid for the claimant to see Dr. Hogan on two occasions and his

---

1. § 287.140(1) states, in part, as follows: "In addition to all other compensation the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, ... as may reasonably be required, after the injury or disability, to cure and relieve from the effects of the injury. If the employee desires, he shall have the right to select his own physician, surgeon or other such requirement at his own expense."

records do not include any complaints of headaches and neck pain. Dr. Hogan, however, did examine the claimant's head and neck and this examination revealed no tenderness or limitation of motion. The claimant went at her own expense to see Dr. Eyerman, a neurologist, and he was unable to determine the etiology of the headaches. His report listed various things which could have contributed to her problems.

Therefore, there is ample evidence to support the commission's decision not to award the claimant's costs of treatment for the headaches.

■ The claimant's allegations that she complained of neck pain from the very beginning are similar to the claimant's allegations in *Clare v. Wilson Freight, Inc.*, 748 S.W.2d 740, 741 (Mo.App.1988). In *Clare* the claimant testified that, from the outset, he complained about his back to the various doctors who treated him. *Id.* The records and testimony, however, indicated that the claimant did not complain of a back injury until three years after the accidental injury he sustained in the course of his employment. *Id.* We found this evidence supported a finding that the claimant's back injury was unrelated to the initial accident.

Here, although the claimant alleges she complained earlier, the records reflect no reference to cervical pain until March of 1988, over two years after the accident, when claimant saw Dr. Lewis. The decision of the commission makes no mention as to the cause of the neck injury but does state that the injuries to the back, coccyx and TMJ were causally connected to the accident. Therefore, we can imply that the commission found that the neck injury was not connected to the original accident and there is sufficient evidence to support such a finding.

■ Finally, the claimant argues that because the commission found that the accident caused her TMJ injury she should be awarded all the expenses of the doctors who treated her for TMJ. The employer, however, is only bound to provide treatment as "may reasonably be required." Here, the commission awarded the claimant the costs of her treatment by Dr. Steuterman, an oral surgeon trained in dentistry, while denying the costs of treatment by Dr. Lewis, a chiropractor, and Dr. Eyerman, a neurologist. Thus, it can be inferred that the commission found that only Dr. Steuterman's treatment of the TMJ was reasonably required of the employer and, therefore, the employer was not liable for the costs of Dr. Lewis and Dr. Eyerman's treatment for TMJ. The claimant's first point on appeal is denied.

■ The claimant's second point on appeal alleges the commission erred in failing to award the claimant future medical. The reasoning discussed in claimant's first point in which we affirmed the Commission's finding denying her the costs of treatment to her back, neck and head injuries by Dr. Lewis, Dr. Eyerman and Dr. Young, is also relevant here. Therefore, we need not rehash this claim in detail and we find the commission had sufficient evidence to deny claimant's request for future medical compensation.

■ The claimant also seeks future medical compensation for the TMJ injury which the commission found was casually connected to the accident. The commission, however, did not award the claimant any future medical compensation for the TMJ injury. Although the commission did not give a specific reason for denying claimant's request for future medical payments there is sufficient evidence to support such a ruling.

The claimant testified that the bite appliance given to her by Dr. Steuterman was the first step in her treatment of the TMJ and that it had not corrected the problem. Her testimony, however, was unclear as to what further treatment was necessary and Dr. Steuterman's records do not support her testimony. Dr. Steuterman's records do not indicate any need for further treatment for the TMJ, other than to continue to see Dr. Lewis, and Dr. Steuterman stated she did not need surgery. As for the treatment of Dr. Lewis the commission denied the claimant's request for treatment he provided for the TMJ originally, and, there-

fore, any future treatment he provided for this injury would be inappropriate. Therefore, claimant's second point on appeal is denied.

The claimant's next point on appeal alleges the commission erred in its permanent partial disability (PPD) awards referable to the low back, coccyx and jaw for TMJ. The commission awarded 7½% PPD of the body as a whole referable to the low back, 5% of the body as a whole referable to the coccyx and 5% PPD of the body as a whole referable to the jaw for TMJ. The claimant acknowledges that there is conflicting evidence as to the PPD of these areas and where there is such conflicting evidence the decision is within the determination of the commission. The claimant, however, argues that the decision of the commission is against the overwhelming weight of the evidence. We disagree.

The claimant was awarded a total of 12½% PPD of the person as a whole with respect to her back and coccyx. Dr. Kuhlman, who treated the claimant, found a 5% disability of her lumbar spine referable to the accident and Dr. Walters, who examined the claimant, found her PPD of the lumbar spine to be 2–3%. Although we may have made a different award, there was sufficient evidence to support the decision by the commission. Point denied.

The claimant's fourth point on appeal alleges the commission erred in not awarding her permanent partial disability with respect to the injuries to the head and neck. We discussed in detail in the first point on appeal the evidence which supports the commissions decision not to compensate the claimant for her injuries to her head and neck. These same issues are relevant here and we need not discuss them further. Point denied.

The claimant's next point on appeal alleges the commission erred in not awarding a multiplicity factor for the combined effect of the injuries on the claimant. The case relied on by the claimant, *Sapienza v. Deaconess Hosp.*, 738 S.W.2d 149 (Mo.App. 1987), however, is distinguishable from this case. In *Sapienza* the injuries of the claimant were far more serious and the

PPD award was much higher. In addition, the court noted that the commission had the discretion to include a multiplicity factor but was not required to. *Id.* Here, considering the severity of the claimant's injuries and the amount of the PPD awarded to the claimant the commission was well within its discretion in not awarding a multiplicity factor. Point denied.

Claimant's final point on appeal alleges the commission's final award was erroneous in that the case was not ripe for final adjudication because the claimant was only seeking a temporary award. Claimant argues once again that she did not receive any treatment at all for the injuries to the neck, head and jaw and the treatment she received to the low back and coccyx was inadequate. We have discussed these issues at length earlier in this opinion and we found there was sufficient evidence to support the commission's ruling that the employer need not provide any further medical care. Thus, the judgment of the commission is final and claimant's final point is denied.

In the conclusion to the claimant's brief she asks that if the Commission's decision is affirmed that she be awarded interest on the PPD from the date the loss incurred. However, this issue was not raised below and questions which might have been brought to the Commission but were not cannot be litigated on appeal. *Long v. City of Hannibal*, 670 S.W.2d 567, 570 (Mo.App.1984). In addition, the claimant does not bring up this issue until the conclusion part of her brief. "Only those issues presented in the points relied on will be considered." *Carnahan v. American Family Mutual Insurance Co.*, 723 S.W.2d 612, 615 (Mo.App.1987). Therefore, we will not address this issue.

Affirmed.

STEPHAN and CRIST, JJ., concur.