**Daniel E. WINSOR, Respondent,**

v.

**LEE JOHNSON CONSTRUCTION COMPANY and Federated Mutual Insurance Company, Appellants,**

**Second Injury Fund, Defendant.**

No. WD 52889.

Missouri Court of Appeals, Western District.

June 10, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 1997.

Application to Transfer Denied Sept. 30, 1997.

---

M. Joan Klosterman, Kristine A. Purvis, Myerson & Morrow, Kansas City, for appellants.

John K. Allinder, Independence, for respondent.

Before SMART, P.J., and SPINDEN and ELLIS, JJ.

ELLIS, Judge.

Lee Johnson Construction Company, Inc. and its insurer, Federated Insurance, appeal from the decision of the Labor and Industrial Relations Commission finding that Daniel E. Winsor, an employee of Lee Johnson Construction Company, Inc., sustained a job-related injury, and awarding him temporary total benefits and medical treatment.

■ Our review of the Commission's decision is subject to the standard of review set forth in *Davis v. Research Medical Center*, 903 S.W.2d 557 (Mo.App. W.D.1995):

> The reviewing court may not substitute its judgment on the evidence for that of the Commission. The weight of the evidence and the credibility of witnesses are ultimately for the Commission. The court applies a two-step process designed to determine whether the Commission could have reasonably made its findings and award upon consideration of all the evidence before it. In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence. In doing so, it takes into consideration the credibility determinations of the Commission and, if

those determinations as to witnesses who gave live testimony before the ALJ are different than those made by the ALJ, it also considers the ALJ's credibility findings as well as the reasons, if any are given, why the Commission differed with those findings. Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court. *Id.* at 571. In the first step of the review process, the court disregards "any evidence which might support any finding different from those made by the Commission." *Id.* at 566.

Viewed accordingly, the record reveals Winsor was employed as a lineman by appellant Lee Johnson Construction Company, Inc., for approximately twelve years.[1] As a lineman, Winsor was required to climb telephone poles and trim tree branches. While doing this work on February 16, 1991, Winsor suffered a back injury. On April 22, 1991, Dr. Gerald F. Dugan performed a discectomy on Winsor's back. Following this surgery and further treatment, Winsor returned to work in August of 1991.

Early in 1992, Winsor began experiencing difficulties with his back and was referred by Dr. Dugan to Dr. Robert J. Takacs. On July 20, 1992, Dr. Takacs performed a second discectomy on Winsor's back. On December 16, 1992, Dr. Takacs released Winsor to return to work without restrictions. When releasing Winsor to return to work, Dr. Takacs assessed Winsor's permanent partial disability to be 15 percent.

Winsor filed a worker's compensation claim against Lee Johnson Construction for the 1991 injury. In conjunction with this claim, in January of 1994, Winsor was examined by Dr. Paul L. Weygandt who assessed his permanent partial disability at 35 to 40 percent. Winsor's attorney then began settlement negotiations with appellants. Prior to concluding the settlement of the 1991 injury, Winsor injured his back again on August 11, 1994. He filed a claim for compensation for the August 11th injury on September 23, 1994. On September 28, 1994, appellants filed an answer to the claim for compensation in which they tendered "medical care and treatment."

In the meantime, sometime between August 11th and September 19th, a settlement of the 1991 injury was reached by the parties. The settlement was confirmed by Federated's attorney in a letter to Winsor's lawyer on September 19, 1994 and clearly indicated it was a settlement of the 1991 injury. Indeed, the letter revealed that Johnson Construction had not provided Federated with any information regarding "Mr. Winsor's new injury," but stated that Federated would contact the employer about the matter, open a claim file, investigate the facts and circumstances, and counsel would be back in touch. Finally, Federated's attorney advised that a "walk-in settlement at the Division of Workers' Compensation ... on September 30, 1994, at 10:15 a.m." had been scheduled.

Based on this correspondence and the appellants' answer to the claim for compensation on the August 11, 1994 injury in which they tendered medical care and treatment, the 1991 claim was concluded at the "walk-in settlement at the Division of Workers' Compensation" on September 30, 1994. Thereafter, appellants refused to provide medical care and treatment or compensation benefits for the August 11th injury.

The matter eventually was heard by an Administrative Law Judge ("ALJ") who found that Winsor did not suffer a compensable injury on August 11, 1994, and denied the claim. The ALJ found that Winsor's symptoms actually derived from his 1991 injury. Winsor appealed to the Labor and Industrial

---

1. Lee Johnson Construction Company, Inc., installs and removes telephone lines for Southwest-ern Bell Telephone Company.

Relations Commission, which reversed the decision of the ALJ, finding the evidence established that Winsor suffered an additional injury to his back on August 11, 1994. Lee Johnson Construction and Federated Mutual bring two points on appeal.

■ In their first point, Lee Johnson Construction and Federated Mutual claim that the Commission erred in finding that Winsor suffered an injury arising out of and in the course of his employment on August 11, 1994. They contend that Winsor failed to establish that his symptoms were related to the incident on August 11, 1994, rather than his previous injury.

When viewed according to our standard of review, *supra*, there is sufficient competent and substantial evidence to support the Commission's award. The record reveals that Winsor sustained a work related injury on February 18, 1991. As a result, he underwent two back surgeries, the last of which was performed by Dr. Takacs on July 20, 1992. Five months after that surgery, on December 16, 1992, Winsor had a follow-up visit with Dr. Takacs who reported the following:

> *FOLLOW-UP VISIT:* Mr. Winsor returns today. He is five months postoperative.... He is doing quite well. He rates his pain as 0 on a scale of 0–10.
> *PHYSICAL EXAMINATION:* He moves about the room very easily, on and off the table. He has a normal gait. Straight leg raising is negative. He has a full range of motion of his back. He can forward flex and touch his toes. His wound is nicely healed.
> *IMPRESSION:* EXCELLENT POST-OPERATIVE COURSE
> *PLAN:* We can fully release him without restrictions.... He has reached his maximum point of improvement and has a permanent disability based on his diagnosis of recurrent disc rupture and necessity of excision of 15 percent (15%) whole body.

Following his release by Dr. Takacs, Winsor returned to work. That work entailed cutting brush with a chain saw while leaning out from a bucket suspended from a mechanical arm. Winsor would use one hand to cut branches with the chain saw and one hand to pull away the severed branches and toss them off to the side. This work required Winsor to swing the chain saw while twisting his upper body. Winsor was able to perform this work for over a year and a half after returning from the second back surgery. Indeed, Charlie Johnson, President of Lee Johnson Construction, testified that after Winsor returned to work he "pretty well" worked without complaint, performing his job as he always had.

Regarding the incident on August 11, 1994, Winsor testified that he was working cutting tree branches while standing and leaning out of the bucket of the aerial lift on the bucket truck. He was swinging the chain saw, twisting his body and cutting brush. With his left hand, he was pulling the cut limbs out, swinging them around and pushing them away. While doing so, he "felt a real sharp pain in the lower part of [his] back." Winsor had not experienced pain like that since returning to work in December of 1992. He further testified that the "sharp, throbbing pain" was bad enough he had to stop working. After the incident on August 11, 1994, Winsor could no longer work because of throbbing pain in his back and because his left leg would begin to throb and then go limp.

We must view the "evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Davis v. Research Medical Ctr.*, 903 S.W.2d at 571. A clear and reasonable inference that Winsor suffered an injury by accident arising out of and in the course of his employment on August 11, 1994, can be drawn from the following evidence: (a) Dr. Takacs stated that Winsor could return to his strenuous, strength and mobility intensive work without any restrictions;[2] (b) Winsor performed that work without problems or difficulty from December 16, 1992 until August 11, 1994; (c) On August 11, 1994, while performing that work, which he routinely had been doing for almost two years, he suddenly "felt a sharp

2. The Commission gave substantial weight to Dr. Takacs' report of December 16, 1992, because

Dr. Takacs was Winsor's treating physician and performed the second surgery on his back.

pain in the lower part of [his] back" which forced him to stop working and prevented him from working thereafter.

The record also contains the reports and testimony of Dr. Weed, who examined and treated Winsor after the August 11, 1994 accident. In a report dated August 8, 1995, Dr. Weed stated that Winsor "had essentially recovered from his previous surgery" prior to the August 11th injury. Dr. Weed further reported that Winsor "had minimal symptoms if any at all prior to the injury he received on August 11," but after that injury, Winsor had "a lot of muscle spasm in his lumbar spine." In a later report, Dr. Weed noted that nearly a year after the August 11th injury, Winsor continued to have a fair degree of muscle spasm of his lumbar spine, as well as left sided radicular symptoms and that he needed continuing treatment, including physical therapy. Finally, Dr. Weed testified that "[s]omething happened on August the 11th while [Winsor] was trimming those trees that caused an exacerbation of his previous back surgery, previous injury, and that arthritis to cause him enough pain that he could not work after that point."

 Substantial evidence is competent evidence from which a trier of fact can reasonably decide the case. *Garrett v. Overland Garage & Parts, Inc.*, 882 S.W.2d 188, 191 (Mo.App. E.D.1994). An employee is only required to show that his injury is "job related." *Rector v. City of Springfield*, 820 S.W.2d 639, 643 (Mo.App. S.D.1991) (citing *Wynn v. Navajo Freight Lines, Inc.*, 654 S.W.2d 87, 89 (Mo. banc 1983)). The injury need not result from any unusual or abnormal event. *Wolfgeher v. Wagner Cartage Serv., Inc.*, 646 S.W.2d 781, 784 (Mo. banc 1983). Rather, it is sufficient to show only that the performance of usual and customary duties led to a breakdown or a change in pathology. *Id.* The worsening of a preexisting condition is a "change in pathology." *Rector*, 820 S.W.2d at 643.

 Moreover, it must be remembered that this is an appeal from an award determining that Winsor "is entitled to *temporary total benefits until such time as claimant reaches maximum medical improvement. ...*" (emphasis added). As such, Winsor needed only to establish that he was injured as a result of an accident arising out of and in the course of his employment which resulted in temporary disability and need for medical care. *Minnick v. South Metro Fire Protection Dist.*, 926 S.W.2d 906, 909 (Mo. App. W.D.1996). For an award of temporary disability and medical aid, proof of cause of injury is sufficiently made on reasonable probability. *Griggs v. A.B. Chance Co.*, 503 S.W.2d 697, 703 (Mo.App. W.D.1973).

 Dr. Weed testified that there was an exacerbation of Winsor's previous back injury by virtue of the August 11th incident. "Exacerbation," whether used in medical parlance or everyday conversation, means the same thing: an "increase in the severity of a disease or any of its symptoms," *Dorland's Illustrated Medical Dictionary* 589 (28th ed.1994), an "intensification or aggravation, as of a disease, pain, etc." *Webster's New Twentieth Century Dictionary* 634 (2nd ed.1979). Thus, according to Dr. Weed, Winsor's injury on August 11, 1994, caused an increase in the severity of the symptoms of his previous condition, at the very least. The worsening of a preexisting condition, i.e., an increase in the severity of the condition, or an intensification or aggravation thereof, is a "change in pathology." *Rector v. City of Springfield*, 820 S.W.2d at 643. Dr. Weed's testimony is direct evidence of Winsor's job related injury and resultant disability. Thus, our review of the record in the manner prescribed by our standard of review reveals "sufficient competent and substantial evidence to support the award." *Davis v. Research Medical Ctr.*, 903 S.W.2d at 571.[3] Point denied.

 In their second point, appellants contend the Commission erred in finding Winsor's testimony regarding the August 11, 1994 incident credible and that the contrary

---

**3.** While we find sufficient evidence to support the award, we nevertheless acknowledge this is a close case. Without detailing all the evidence which would justify a contrary result, we can say that had the Commission ruled against Winsor, the application of our standard of review to such decision based on the record before us would likely result in our affirmance thereof.

finding by the ALJ should have been given greater weight.[4] During the hearing before the ALJ, Winsor testified that he did not remember making certain complaints to Dr. Weygandt which were reflected in Dr. Weygandt's report. Based on this testimony, the ALJ found that all of Winsor's testimony lacked credibility and rejected it in toto. Appellants claim the Commission erred in making a different finding.

■ "[T]he Commission is not bound or obligated to yield to the ALJ's determination of the credibility of witnesses or its other findings of fact and we review the Commission's award, not the findings of the ALJ." *Davis*, 903 S.W.2d at 574. The Commission disagreed with the ALJ's credibility assessment of Winsor to the extent "the administrative law judge rejected the whole of claimant's testimony because he could not recall what he told a rating physician one and a half years earlier." The Commission noted that Winsor never denied making the complaints to Dr. Weygandt but merely stated he did not "recall" making them. The Commission found that Winsor's assertions that he did not recall making the complaints reflected in Dr. Weygandt's rating report justified disregarding Winsor's testimony relating to Dr. Weygandt's examination, but was not sufficient to warrant disregarding Winsor's testimony about August 11, 1994.[5]

■ In assessing Winsor's credibility, the Commission examined his work history as a foreman—"a position of responsibility and trust." The Commission found that testimony by Winsor's employer of more than ten years, attesting to Winsor's truthfulness, "should carry significant weight" in assessing Winsor's overall credibility.[6] As a result, the Commission accepted as credible Winsor's testimony relating to the incident on August 11, 1994. Having reviewed the record, we find the Commission's explanation of why it made a different determination regarding Winsor's credibility to be reasonable, and "do not believe that his [testimony] was inherently improbable or so inconsistent or contradictory as to make the Commission's reliance on it injudicious or unreasonable." *Davis*, 903 S.W.2d at 573–74.

In reaching its decision, the ALJ also discounted the value of Dr. Weeds' deposition testimony and relied heavily on the deposition testimony of the Appellants' expert, Dr. Miskew. In contrast, the Commission found Dr. Miskew's deposition testimony entirely uncredible, and placed stock in the opinion of Dr. Weed. Furthermore, the ALJ relied heavily on the report of Dr. Weygandt, while the Commission placed much more weight on the report written by Dr. Takacs. Because none of these doctors appeared before the ALJ to provide live testimony, " 'the Commission could determine [their credibility] from the written record equally as well' as the ALJ." *Davis*, 903 S.W.2d at 573 (quoting *Frazier v. National Bearing Division*, 250 S.W.2d 1008, 1011 (Mo.1952)). Therefore, we

---

4. While appellants do not articulate there second point in terms of the Commission's award being against the overwhelming weight of the evidence, the second step in the *Davis* analysis, our consideration of their point is nevertheless dispositive of the issue.

5. Dr. Weygandt did not testify at the hearing or through deposition. The report relied on by the ALJ was unsworn and photocopied.

6. Harry L. Johnson, vice president of Lee Johnson Construction Company, testified as follows:
 Q: Was he a good employee?
 A: Yes.
 Q: Was he truthful to the best of your knowledge?
 A: Yes.
 * * * * * *
 Q: In fact, from his past history you have every reason to believe he is telling the truth?
 A: No, I don't believe that—I don't think that he's a habitual liar or anything like that, if that's what you're leading up to.
 Q: He's always been truthful with you, hasn't he?
 A: Very truthful to me.
 Q: And you don't have any reason to believe he would be untruthful this time, do you?
 A: No, I really don't.
 Charlie W. Johnson, president of Lee Johnson Construction Company, testified as follows:
 Q: Now, do you have any information that Mr. Winsor has not told the truth about how this injury occurred on August 11th of 1994?
 A: That he has not told the truth?
 Q: Yes. Do you have any information that Mr. Winsor has not told the truth?
 A: No, no.
 Q: As far as you know, he's telling the truth?
 A: Yes, as far as I know.

must defer to the credibility determinations of the Commission regarding these various medical experts and disregard the determinations of the ALJ. *Id.* Given these credibility determinations, and the deference we must accord them, and upon review of the whole record, it is apparent that the Commission's award is not contrary to the overwhelming weight of the evidence.[7]

The award of the Commission is affirmed.

---

7. For factually similar cases reaching the same result, *see Davis v. Research Medical Center,* 903 S.W.2d 557 (Mo.App. W.D.1995); *Shelden v. Tex-as County Memorial Hospital,* 916 S.W.2d 402 (Mo.App. S.D.1996); and *Rector v. City of Spring-field,* 820 S.W.2d 639 (Mo.App. S.D.1991).