Robert MINIES,
Employee/Respondent/Cross–Appellant,

v.

MEADOWBROOK MANOR,
Employer/Appellant/Cross–Respondent,

and

Commercial Union Insurance,
Insurer/Appellant/Cross–Respondent.

No. ED 81502.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 6, 2003.

Susan Kelly, McBrearty, Hart & Kelly Law Offices, St. Louis, for Appellant.

Louise Rose Ryterski, St. Charles, MO, for Respondent.

SHERRI B. SULLIVAN, J.

### Introduction

Robert Minies (Employee) and Meadowbrook Manor and Commercial Union Insurance (collectively Meadowbrook) each appeal from the Labor and Industrial Relations Commission's (Commission) Corrected Final Award allowing Compensation to Employee (Award).[1] We affirm.

### Factual Background of Injury

In December of 1992, Meadowbrook employed Employee as a Certified Nurse's Assistant (CNA). On December 1, 1992, Employee was transferring a patient into her bed when a bed rail fell on his right foot. Employee notified his supervisor, Donna Blahut (Blahut), of the injury. Blahut had Employee fill out a form describing the injury. The next day Employee's foot was so swollen he could not get his shoe on. He reported to work and told the Director of Nursing, Carolyn Schulte (Schulte), about the incident and injury. Schulte advised Employee to see Dr. Felder.

Employee saw Dr. Felder who prescribed antibiotics, salve, and foot soaks in Epsom salts, and advised him to stay off work. Employee saw Dr. Felder several times a week for seven to eight weeks after the injury. Employee's foot did not improve.

In February of 1993, Employee's third toe on his right foot "popped" and began draining something. Employee went to the emergency room at St. Joseph's Hospital and was diagnosed with gas gangrene, as well as diabetes. The emergency room physician recommended an immediate amputation of Employee's right foot. Employee requested a second opinion and was transferred to Veteran's Hospital by ambulance. At Veteran's Hospital, Employee underwent a below-the-knee amputation on his right leg.

Employee was fitted with a prosthesis. Near the end of March 1993, Employee was discharged from the hospital. For the next six months, a home health care nurse treated Employee with antibiotics.

### Factual Background of Claims for Compensation

On May 29, 1995, Employee filed his first claim for compensation (claim) with the Division of Workers Compensation (Division). The claim listed a date of injury of December 1992. The claim listed Charlevoix and Crawford and Company as the employer and insurer respectively. The

---

1. The Corrected Final Award differs from the original Final Award only in correcting a clerical error in the calculation of the number of weeks of disability. The remainder of the original Final Award remains in effect as originally issued.

claim alleged an injury due to working long hours aggravating swelling and calluses leading to infection and amputation.

On August 16, 1995, Employee filed his second (first amended) claim listing a date of injury of December 1992, describing the incident of the bed rail falling on Employee's foot. This claim listed Charlevoix and National Union Fire Insurance as the employer and insurer respectively.[2]

On April 30, 1996, Employee filed his third claim, which for the first time listed Meadowbrook and Commercial Union Fire Insurance as the employer and insurer respectively for the December 1992 incident of the bed rail falling on Employee's foot.[3]

### Procedural Background

The August 1995 claim listing Charlevoix as the employer was within the three-year period for filing the claim listed above. The April 1996 claim listing Meadowbrook as the employer was not. The issue before the Administrative Law Judge (ALJ) at the original hearing was whether or not the April 1996 claim listing the employer as Meadowbrook could relate back to the timely claim filed in August 1995 naming Charlevoix.

The ALJ found that the April 1996 claim listing the employer as Meadowbrook could not relate back to the timely claim filed in August 1995 naming Charlevoix, because there was no evidence before him indicating the relationship between Meadowbrook and Charlevoix, other than that they operated at the same location and

that Employee had worked there under both names.

The Commission reviewed the transcript of the hearing before the ALJ, heard arguments of parties and reviewed the briefs. Without determining whether the ALJ was correct on the evidence before him, the Commission by its order of January 23, 2002, set the matter for hearing before the Commission, pursuant to Section 287.480 et al, for additional evidence on the question of the relationship between Meadowbrook and Charlevoix.

An evidentiary hearing was held before the full Commission on April 15, 2002. Based on the additional evidence presented to the Commission, the Commission determined that the April 1996 claim related back to the August 1995 claim, because the April 1996 claim was filed merely to correct a misnomer in the August 1995 claim. Accordingly, the Commission issued an order reversing the Award of the ALJ. These appeals follow.

Meadowbrook presents four points on appeal.

### Point I

In its first point, Meadowbrook maintains that the Commission acted in excess of its powers by upon its own motion conducting an evidentiary hearing and taking new evidence.

### Standard of Review

■ The Court of Appeals may modify, reverse, remand for rehearing, or set aside

---

2. The Commission found in its Award that this is the claim that is significant on the issue of "relation back" as it does describe the December 1992 incident. The Commission also noted that because there was no report of injury, the claim was timely filed within the three-year period for filing a claim under Section 287.430 RSMo (2000); leaving aside for now the question of the name of the employ-

er. All further statutory references are to RSMo (2000), unless otherwise noted.

3. On March 5, 1999, Employee filed a fourth claim listing both Charlevoix and Meadowbrook as employers. However, the important claims for consideration herein are the ones filed in August 1995 and April 1996.

an award or decision of the Commission in a workers' compensation case only if the Commission's actions were unauthorized by law, in excess of its authority, fraudulent, unsupported by the facts as found by the Commission, or unsupported by competent evidence on the whole record. *Cartee v. Sheraton Westport Inn,* 34 S.W.3d 216, 217 (Mo.App. E.D.2000).

### Discussion

■ Section 287.480 provides for an application for review to the Commission as follows:

1. If an application for review is made to the commission within twenty days from the date of the award, the full commission, if the first hearing was not held before the full commission, shall review the evidence, *or, if considered advisable, as soon as practicable hear the parties at issue, their representatives and witnesses and shall make an award and file it in like manner as specified in section 287.470.*

[Emphasis added]. Meadowbrook maintains that this provision does not give the Commission authority to hear additional evidence on its own motion, and that the Commission's own regulations, specifically 8 CSR 20–3.010, 3.030 and 3.020 state that the Commission shall not conduct original hearings on contested cases.

8 CSR 20–3.010 and 3.030 provide for the original hearings of claims and not with additional evidentiary hearings, as we have here. Accordingly, they do not govern the situation at bar nor do they conflict with Section 287.480, which specifies that the Commission itself may request more evidence to be presented before it. 8 CSR 20–3.020 provides for the introduction of additional evidence by the parties themselves. Again, such is not the case here.

Meadowbrook's reliance on these regulations is misplaced.

The Commission, on its own motion pursuant to Section 287.480, has ordered cases to be reheard en banc in the past, taking additional evidence and/or hearing additional testimony. Its authority to do so has been discussed and upheld. *See Davis v. Research Medical Center,* 903 S.W.2d 557, 562 (Mo.App. W.D.1995); *Hatter v. Cleaning Service Co.,* 814 S.W.2d 951, 956 (Mo.App. W.D.1991); *Highley v. Martin,* 784 S.W.2d 612, 617 (Mo.App. S.D.1989); *Ross v. Safeway Stores, Inc.,* 738 S.W.2d 611, 617 (Mo.App. S.D.1987); *Lake v. Midwest Packing Co.,* 301 S.W.2d 834, 835 (Mo.1957).

Meadowbrook presents the case of *Hartley v. Spring River Christian Village,* 941 S.W.2d 4 (Mo.App. S.D.1997), in support of its point. *Hartley* concerned a situation where the employer was not allowed to present rebuttal evidence, which is not the case here. Meadowbrook also cites *Stegeman v. St. Francis Xavier Parish,* 611 S.W.2d 204 (Mo.banc 1981). *Stegeman* concerns the Commission's taking of judicial notice of evidence, as opposed to the taking of additional evidence. As such, it has no relevance here.

For the foregoing reasons, we find Meadowbrook's first point to be without merit. Point I is denied.

### Point II

In its second point, Meadowbrook maintains that the Commission's conclusion that Meadowbrook and Charlevoix are related corporations is not supported by any substantial evidence.

### Standard of Review

■ We examine the record and all reasonable inferences therefrom in the light most favorable to the findings and award of the Commission to determine

whether they are supported by competent and substantial evidence. *Sutton v. Vee Jay Cement Contracting Co.*, 37 S.W.3d 803, 807 (Mo.App. E.D.2000). The Commission's factual findings and resulting award should be set aside on appeal only if they are not supported by competent and substantial evidence or, even if supported by such evidence, if they are clearly contrary to the overwhelming weight of the evidence. *Id.* Otherwise, we must affirm. *Id.*

### Discussion

■■■ Rule 55.33(c)[4] provides for the relation back of amended claims as follows:

(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and within the period provided by law for commencing the action against the party and serving notice of the action, the party to be brought in by amendment: (1) has received such notice of the institution of the action as will not prejudice the party in maintaining the party's defense on the merits and (2) knew or should have known that, *but for a mistake concerning the identity of the proper party,* the action would have been brought against the party.

(emphasis added). *See also Bailey v. Innovative Management & Inv., Inc.*, 890 S.W.2d 648, 652 (Mo.banc 1994) ("Thus, the same corporation was named in both petitions; in the first petition it is named by its former name and in the second it is named by its current name. There is no doubt that both references are to the corporation that manufactured the nail gun. This is a classic example of a misnomer case. Defendant's argument to the contrary is rejected.")[5]

Meadowbrook's point only concerns the Commission's finding that Employee's amended claim related back because he merely misnamed Meadowbrook as Charlevoix, and the two were the same or related parties.

The Commission found substantial evidence that Meadowbrook underwent a name change from Charlevoix to Meadowbrook at or near the time of the injury but was consistently owned by the same corporation and operated at the same address. Such evidence consisted of records from the Department of Health and Senior Services showing that First Healthcare Corporation (First Healthcare) owned the nursing home located at 1221 Boonslick from February 1, 1990 through December 30, 1993, the period of time at issue. First Healthcare is listed as operator and 100% owner on Charlevoix's Application for license to Operate a Long Term Care Facility. This record, received by the Department of Health on December 23, 1991, lists First Healthcare's address as 1148 Broadway Plaza, Tacoma, Washington. First Healthcare, at this same address, is listed as the owner of the nursing home at 1221 Boonslick while it was named Meadow-

---

**4.** All rule references are to Mo. R. Civ. P.2002, unless otherwise noted.

**5.** Although workers' compensation is a creature of statute, many common law pleading principles apply, such as the rule that whenever a claim asserted in an amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. *Holaus v. William J. Zickell Co.*, 958 S.W.2d 72, 79 (Mo.App. E.D.1997).

brook Manor. The paperwork originally incorrectly listed Meadowbrook as both the name of the facility and the owner. This mistake was later corrected, retroactive to the date of the facility's name change on August 1, 1992.

Karen Gooch (Gooch), Meadowbrook's office manager, testified that the nursing home at 1221 Boonslick changed names from Charlevoix to Meadowbrook around the time of the injury. However, no formal announcements were made to the employees about the name change, no changes on the employee handbooks, name tags, or building signs were made until at least three months to a year after the change. Meadowbrook accepted mail addressed to Charlevoix. The staff, managers, job duties and rate of pay all remained the same during this time.

We find these documents and testimony to be substantial evidence that Charlevoix and Meadowbrook were the same facility with the same owner, and that the Commission properly applied the relation back rule because Employee's listing of Charlevoix was merely a misnomer. Accordingly, Point II is denied.

### Point III

In its third point, Meadowbrook asserts that the Commission's conclusion that the amputation was related to the cut caused by the work injury is against the overwhelming weight of the evidence. Meadowbrook claims that all credible evidence supports a finding that the amputation was related to the infected calluses.

### Standard of Review

■ The standard of review for this point is the same as that set forth under Point II. Additionally, however, we note that the Commission is the sole judge of the credibility of the witnesses and the weight and value of the evidence, therefore its determination regarding conflicting medical opinions will not be disturbed unless it is against the overwhelming weight of the evidence. *Boyer v. Nat'l Express Co., Inc.*, 49 S.W.3d 700, 706 (Mo.App. E.D.2001).

### Discussion

■ Meadowbrook asserts that review of all of the original medical records provide a history of Employee having a callus that became infected, and that his infection was not caused by the bed railing falling on his foot.

We do not determine that the findings of the Commission regarding the credibility of the medical testimony are *against the overwhelming weight of the evidence.* Dr. Jeff Reilly (Dr. Reilly), Meadowbrook's examining physician, testified as follows:

It seems quite clear that [Employee] suffered a minor injury in December. It was also clear that he had diabetes which was undiagnosed. The combination of an open wound and diabetes is a common setting for the development of a synergistic soft tissue infection. The treatment of this usually is a radical debridement or amputation. Although it is hard to believe that such a terrible thing can result from such a minor trauma, I think that in this case his amputation is directly related to the secondary infection of his injury. His diabetes was obviously a factor which contributed greatly to this problem.

Dr. Reilly also testified that Employee "developed a traumatic lesion on his foot, which became secondarily infected. And it was that infection which resulted in the loss of his foot." St. Joseph's medical records show that when Employee went into the emergency room, the doctor there diagnosed a(1) foot injury, (2) leading to

infection, leading to gas gangrene, and (3) osteomyelitis.

We find these medical records and testimony demonstrate that the Commission's finding that Employee's amputation was related to the cut caused by the work injury is not against the overwhelming weight of the evidence. Furthermore, Meadowbrook's assertion that the amputation was caused by Employee's infected calluses and not by his injury is without merit. Dr. Reilly testified that: "Calluses per se do not become infected. They are dead skin . . . . if there is a minor break in the skin integrity around the callus . . . this could become infected. Based on the information I was given, I stand by my original conclusion [that the bed rail injury caused the infection that caused the amputation] unless you can provide the documentation that clearly states that he did not have any break in skin integrity associated with his injury of December 1992."

For the foregoing reasons, Point III is denied.

### Point IV

In its fourth point, Meadowbrook maintains that the Commission's award of permanent partial disability for the aggravation of the pre-existing diabetic condition is not supported by any medical evidence.

### Standard of Review

The standard of review for this point is the same as that set forth under Point II.

### Discussion

■ Meadowbrook claims that the Commission relied solely on Employee's testimony to award disability for aggravation of his pre-existing diabetes. The proof of causation when dealing with an allegation of a pre-existing condition being aggravated by a subsequent injury is not within the realm of lay understanding.

*Modlin v. Sun Mark, Inc.*, 699 S.W.2d 5, 7 (Mo.App. E.D.1985). Expert testimony is required to establish medical causation in cases where the condition is not within common knowledge. *Davis v. General Electric Co.*, 991 S.W.2d 699, 706 (Mo.App. S.D.1999).

In its Award the Commission states that "to the extent the current condition *aggravates the diabetic problem* and further limits the employee, additional disability is created." [emphasis added]. However, in its discussion preceding this conclusion, the Commission discusses how:

[a]fter the amputation and initial follow up, the employee developed problems with friction ulcers at the amputation sight [sic] when using the prosthetic leg, *due in part to his diabetes* . . . . Based upon the testimony of Dr. Reilly, the medical records, and the employee's own testimony, it appears that the problem with the friction ulcers is a continuing one with a clear probability, if not certainty, of recurring . . . . We also find that *this injury has caused a greater disability than the amputation alone due in part to the employee's diabetes which makes it necessary for the employee to further limit his activities* as describe [sic] in the record and summarized above . . . .

[emphasis added]. The Commission then states its conclusion that the injury aggravated the diabetic condition, adding:

Because of the problem of the prosthetic device aggravating the employee's condition the employee must often avoid wearing his prosthetic leg. The evidence reflects that sometimes the ulcers last as long as six months. During this time the employee has to avoid using his prosthetic device and is therefore further disabled.

We find that the foregoing excerpts of the Award make it clear that the Commission awarded an additional disability of 15% of the body as a whole due to the fact that because of the diabetes, Employee suffers a greater disability than the amputation itself, because the diabetes causes friction ulcers and Employee must go without his prosthetic device for long periods of time, causing difficulties in walking and other physical activities. These difficulties are within the realm of lay understanding. The Commission found that the injury resulted in body as a whole disability in addition to disability to the leg because all of Employee's activities have been impaired. The Commission's statement that the injury aggravated the diabetes would have been better stated that the injury was aggravated by the pre-existing diabetes and caused a greater disability than the amputation alone.

For the foregoing reasons, we find that the Commission's award of 15% of the body as a whole disability, in addition to the disability of the amputation, is supported by substantial evidence and is not against the overwhelming weight of the evidence. Accordingly, Point IV is denied.

### Conclusion

To the extent of Meadowbrook's four points on appeal, the Award of the Commission is affirmed.

### Employee's Cross–Appeal

Employee presents two points on cross-appeal.

### Point I

In his first point, Employee maintains that the Commission erred in finding that Employee, a 55–year–old, below-the-knee amputee with limited training, substantial restrictions and major depression, is not permanently and totally disabled. Em-

ployee argues that this finding is against the overwhelming weight of the evidence in the record because Employee's work history since the amputation has consisted of sporadic, irregular, charitable hiring jobs. Furthermore, the constant wearing of his prosthetic device while working accelerates the development of open wound ulcers where the device rubs against his stub, all of which demonstrates that Employee is totally disabled and incapable of returning to employment.

### Standard of Review

The standard of review for Point I on cross-appeal is the same as that set forth under Meadowbrook's Point II on direct appeal.

### Discussion

Section 287.020.7 provides that "The term 'total disability' as used in this chapter shall mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." The pivotal question in determining whether a workers' compensation claimant is permanently and totally disabled is whether an employer can reasonably be expected to hire this claimant, given his present physical condition, and reasonably expect him to successfully perform the work. *Sutton*, 37 S.W.3d at 811.

In its Award, the Commission stated that in the absence of expert testimony it could not find that Employee's depression was medically causally related to his injury based upon the medical records and Employee's own testimony, because expert testimony is required to establish medical causation in cases where the condition is not within common knowledge or experience. *See Davis*, 991 S.W.2d at 706. Therefore the Commission did not award any permanent and total disability benefits

for Employee's psychological condition. We conclude that this finding is not against the overwhelming weight of the evidence in the record.

In response to Employee's claim for permanent and total disability, for reasons other than depression, the Commission merely stated: "Based upon the record before us we do not find the employee to be permanently and totally disabled on account of his work related injury considered alone." Although we sympathize with Employee's condition, and appreciate the difficulties he faces each day, we do not consider this finding to be against the overwhelming weight of the evidence. Employee did not present any expert medical or vocational testimony in support of his argument that he cannot return to any employment because he is permanently and totally disabled. Employee was in fact employed by several employers after recuperating from his injury, thus contradicting any finding that an employer could not reasonably be expected to hire Employee given his present physical condition. Although Employee has difficulty in performing his work, and must take time off from work when his ulcers surface and while they heal, these difficulties do not rise to the level of an inability to return to any employment.

For the foregoing reasons, Employee's Point I on cross-appeal is denied.

## Point II

In his second point, Employee contends that the Commission erred in denying Employee compensation for future costs for treatment of depression and for permanent partial disability to the body as a whole for depression because the overwhelming weight of the evidence shows that Employee's depression is the result of the life changing leg amputation, his inability to work, and to carry out a normal life.

## Standard of Review

The standard of review for Point II on cross-appeal is the same as that set forth under Meadowbrook's Point II on appeal.

## Discussion

 As we mentioned under Employee's Point I, the Commission stated that in the absence of expert testimony it could not find that Employee's depression was medically causally related to his injury based upon the medical records and Employee's own testimony, because expert testimony is required to establish medical causation in cases where the condition is not within common knowledge or experience. *See Davis,* 991 S.W.2d at 706. Employee concedes that no such testimony was presented, but contends that a medical chart was submitted supporting a causal relationship between the injury and Employee's depression.

In support of his point, Employee cites *Sapienza v. Deaconess Hospital,* 738 S.W.2d 149, 150–151 (Mo.App. E.D.1987), stating that in *Sapienza,* we affirmed an award of permanent partial disability benefits for psychiatric problems based on the employee's testimony alone. However, in *Sapienza,* the Commission awarded future medical expenses for psychiatric treatment to an employee who had been receiving psychiatric counseling every four to six weeks to deal with his anger and depression over the severe burns he suffered at his job. Additionally, it is not clear from that case whether or not expert testimony or medical records of bills incurred for psychiatric treatment were presented in addition to the employee's testimony.

Further, the Commission has discretion as to the amount of the award and how it is calculated, and in *Sapienza,* we chose not to disturb that discretion because the

award was not against the overwhelming weight of the evidence. *Id.* at 151. Here, Employee is asking us to disturb the Commission's discretion. However, the Commission's decision on the issue of permanent partial disability for depression is not against the overwhelming weight of evidence. On the contrary, the Commission found that there was a lack of evidence to support such an award. As such, we reject Employee's argument.

Employee also claims that the Commission should have awarded him future costs for the treatment of his depression. However, again, Employee only presents his own testimony in support of this argument. Employee presents a record of what appears to be one visit with a psychiatrist. Based on this evidence, we cannot find that the Commission's denial of Employee's request for future costs for the treatment of his depression is against the overwhelming weight of the evidence.

For the foregoing reasons, Point II on cross-appeal is denied.

*Conclusion*

The Award of the Commission is affirmed.

WILLIAM H. CRANDALL, JR., P.J., and GLENN A. NORTON, J., concur.