Marianne **BENNETT, Respondent,**

v.

**COLUMBIA HEALTH CARE,**
**Appellant/Employer,**

**Zurich Insurance Company,**
**Appellant/Insurer,**

and

**Treasurer of the State of Missouri,**
**Custodian of the Second Injury**
**Fund, Respondent.**

**No. WD 62312.**

Missouri Court of Appeals,
Western District.

May 18, 2004.

Truman E. Allen, Columbia, MO, for Respondent Bennett.

Thomas D. Billam, James L. MowBray, Kansas City, MO, for Appellant.

Before VICTOR C. HOWARD, P.J., and LOWENSTEIN and SMART, JJ.

VICTOR C. HOWARD, Judge.

Columbia Health Care (Employer) and Zurich American Insurance Co. (Carrier) (herein collectively referred to as "Appellant") appeal from the Labor and Industrial Relations Commission's final award of compensation to Marianne Bennett (Claimant). Appellant raises three points on appeal. First, Appellant claims that by failing to address proximate causation and whether Claimant's work was a substantial factor in her injury, the Commission did not follow this court's mandate on remand. Next, Appellant argues the Commission erred in ruling Claimant suffered a compensable event, because the ruling is not supported by substantial and competent evidence and is contrary to the overwhelming weight of the evidence, in that the Commission misstated the testimony of the medical experts and relied on unsupported testimony. Finally, Appellant asserts the Commission erred in ordering Employer to pay Claimant's medical bills, because some of the bills do not relate to Claimant's alleged injury.

Affirmed.

## Background

Claimant worked for Employer as a nurse's aide for nineteen years.[1] On May 21, 1997, she filed a Claim for Compensation, alleging an injury to her right knee on November 26, 1996. On November 24, 1998, she filed an amended Claim for Compensation alleging additional accident dates of January 31, 1997, and May 13, 1997.

Prior to the date of her alleged 1996 injury, Claimant had a history of problems with her right knee, which had required medical treatment. At the hearing before the Administrative Law Judge (ALJ), Claimant testified that she had undergone surgery for torn cartilage in her right knee in 1979.

Regarding the injury at issue in this appeal, Claimant testified to two incidents on November 26, 1996. First, she testified that as she was making a patient's bed, she was walking around the bed, and she felt a pop in her right knee. Later that day, she felt another pop in her right knee as she was walking up a flight of stairs. Claimant worked the rest of her shift, but she called in during the night, and the charge nurse on duty told her to go to the emergency room. She did not return to work the next day. The emergency room physician's notes state that Claimant was not carrying anything as she was walking up the stairs. An incident report filed on November 27, 1996, stated that Claimant was carrying clothing protectors at the time her knee popped on the stairs.

At the time of the incidents on November 26, 1996, Claimant believed, and re-

---

1. We borrow heavily from the facts set out in this court's prior opinion in *Bennett v. Columbia Health Care,* 80 S.W.3d 524 (Mo.App. W.D.2002).

marked to her supervisor, that her knee hurt because of her arthritis. As stated previously, Claimant had a history of prior problems with her knee. She had surgery on her right knee for chondromalacia of the patella and removal of a loose body in 1979.

On January 2, 1997, Dr. William C. Allen performed a surgical debridement of Claimant's knee. She returned to work on January 29, 1997. On January 31, 1997, Claimant testified that her knee again "locked up" while she was pushing a wheelchair. On May 13, 1997, according to Claimant's testimony, her knee again "locked up" at work. Claimant has not worked since May 17, 1997. In January 1998, she underwent a total right knee replacement.

A hearing was held November 2, 2000, before an ALJ in Boone County. The parties stipulated to jurisdiction, venue, coverage by the Missouri Workers' Compensation Law, rate of compensation, and Carrier's full coverage of the Missouri Workers' Compensation liability of Employer.

The ALJ issued a decision on January 16, 2001. The ALJ noted that none of the evidence presented indicted that Claimant was suffering from an occupational disease. As such, the ALJ confined his analysis to the question of whether Claimant's injury was compensable as caused by an "accident" arising out of her employment. The ALJ found Claimant did not suffer any "accident" because she had not sustained any fall, loss of balance, slip, or unusual twisting or straining immediately prior to those times when her knee "popped" or gave way. The ALJ also found that the activity, in which Claimant was engaged, walking around the premises (including up and down stairs), was an activity to which she was equally exposed outside of her employment. As such, the ALJ held that her injury was not work-related.

He further found that Claimant "did not sustain an accident arising out of and in the course of her employment on any of the three dates in question." Although both sides had presented medical testimony offering an opinion as to the relationship between the injury and the Claimant's employment, the ALJ did not discuss any of the medical testimony. Instead, the ALJ decided the case strictly on the fact that walking and going up stairs are normal activities of daily life to which the claimant was equally exposed outside of her employment, and that there was no fall, twisting, jerking or loss of balance. Claimant sought review by the Commission, which affirmed the ALJ's award denying compensation. The Commission's final award essentially adopted the ALJ's award without substantial analysis or discussion.

Claimant appealed the Commission's decision, and this court reversed and remanded for further findings. We ordered the Commission to address the pertinent issues prescribed by section 287.030, RSMo, including substantial factor and proximate cause. We also determined that serious questions remained as to whether Claimant's work duties were a substantial factor in causing her injury or whether the injury was merely the natural progression of the preexisting degeneration of her knee. This court noted that in order for an injury to be compensable, the Commission must find that work was a substantial factor in causing the injury.

Specifically, in Bennett I, we reviewed the broadening interpretation of the definition of the term "accident" since our Supreme Court's pronouncements in *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781 (Mo. banc 1983). We noted the shift away from the requirement that

an injury arise from an unusual, sudden or abnormal event to the requirement that an employee need only show that his injury is job related. *Bennett v. Columbia Health Care,* 80 S.W.3d 524, 528–29 (Mo.App. W.D.2002). We further stated "the injury need not result from any unusual or abnormal event. Rather, it is sufficient to show only that the performance of usual and customary duties led to a breakdown or a change in pathology. The worsening of a preexisting condition is a change in pathology." *Id.* at 529 (*citing Winsor v. Lee Johnson Constr. Co.,* 950 S.W.2d 504, 509 (Mo.App. W.D.1997)). We noted that the ALJ's findings, which were adopted by the Commission, erroneously applied the law concerning what constitutes a compensable accident because the findings espoused "the position that, to be compensable, Bennett's injury had to be immediately preceded by either a sudden fall (precipitated by slipping or tripping) or by some unusual strain upon her knee caused by bending, twisting, or kneeling." *Id.*

The Commission also found that the mere act of walking or walking up stairs was not a hazard of employment that could lead to a compensable injury but was "merely a normal activity to which Claimant was equally 'exposed' outside of and unrelated to her employment in normal non-employment life." *Id.* at 530. We found this was error because of our interpretation of *Drewes v. Trans World Airlines,* 984 S.W.2d 512 (Mo. banc 1999), concluding that our Supreme Court appears to hold that "an injury caused or aggravated by walking [can] be considered as 'arising out of' [an] employment." *Bennett,* 80 S.W.3d at 531. We thus concluded

that, since walking and traversing stairs was an integral part of Bennett's job activities, she was engaged in activities incidental to her duties at the time she experienced her knee "popping" and "giving way." *Id.*

On remand, the Commission reversed its prior decision and awarded compensation to Claimant. The Commission found that the act of walking and climbing stairs was incidental to the employment of Claimant as a nurse's aide. It stated, "Because walking was an incident of claimant's employment and walking up stairs was a substantial factor in the change of pathology of her right knee,[2] the Commission must find this case compensable under the workers' compensation law for the State of Missouri." This appeal follows.

**I.**

■ Appellant alleges the Commission did not follow this court's mandate as set out in *Bennett v. Columbia Health Care,* 80 S.W.3d 524 (Mo.App. W.D.2002). On remand, we asked the Commission to address whether or not Claimant's injury arose out of her employment with Employer. Section 287.020.3(2), RSMo, provides that an injury will be deemed to have arisen out of and in the course of the employment only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing the injury; and

(b) It can be seen to have followed as a natural incident of the work; and

(c) It can be fairly traced to the employment as a proximate cause; and

---

**2.** Earlier in the award, the Commission had cited *Smith v. Climate Engineering,* 939 S.W.2d 429, 436 (Mo.App. E.D.1996) for the proposition that an injury is compensable if "it is an unexpected result of the performance of the usual and customary duties of an em-

ployee which leads to physical breakdown or a change in pathology." The Commission found that all three medical experts agreed that a change in pathology in Claimant's right knee occurred after the incidents in November of 1996.

(d) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life[.]

In our previous opinion, we held that serious questions remained as to whether Claimant's work duties were a substantial factor in causing her injury.

In its final award of compensation, the Commission discussed the interpretation of "accident" as used in the workers' compensation statutes. It found that in order to prove she had an "accident," Claimant did not need to show that her injury was the result of an unusual event or occurrence. She merely needed to demonstrate that the performance of her usual and customary duties led to a change in pathology. The Commission noted that although the three medical experts disagreed as to the exact nature of Claimant's injury, they all agreed that there was a change in pathology in Claimant's right knee after the incidents in November of 1996.

Section 287.020.3(1), RSMo, defines "injury" as an injury that has arisen out of and in the course of employment. The injury must be incidental to and not independent of the relation of employer and employee. The Commission found that the act of walking and climbing stairs was incidental to the employment of Claimant as a nurse's aide. It concluded that because walking was an incident of Claimant's employment and walking up stairs was a substantial factor in the change of pathology of Claimant's right knee, she suffered a compensable injury.

 The Commission followed our mandate. It determined that Claimant's injury arose out of her employment. It found that the act of walking up the stairs was incidental to and not independent of the relationship between Claimant and Employer. The Commission further held that walking up the stairs was a substantial factor [3] in the change of pathology of Claimant's right knee. The Commission concluded that Claimant suffered a compensable injury.

Point I is denied.

## II.

 In its second point, Appellant argues that the Commission's decision that Claimant suffered a compensable event is not supported by substantial and competent evidence and is contrary to the overwhelming weight of the evidence. Appellant contends that the Commission relied upon, but misstated, the testimony of the three medical experts in the case in finding work was a substantial factor in causing Claimant's injury. The Missouri Supreme Court recently released an opinion discussing the relevant standard of review in workers' compensation cases when the sufficiency of the evidence is challenged. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003). In *Hampton*, the court stated, "A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Id.* at 222–23. A reviewing court examines all the evidence in the context of the whole record when determining whether an award is supported by competent and substantial evidence. *Id.* at 223. If an award is contrary to the overwhelming weight of the evidence, then it is not supported by compe-

---

**3.** In workers' compensation cases, "a cause is proximate if it is a substantial factor in bringing about the result." *McCutcheon v. Tri-County Group XV, Inc.,* 920 S.W.2d 627, 632 (Mo.App. S.D.1996).

■■■■■■■■■■■■■■■■■■■■■■■■

tent and substantial evidence. *Id.* The *Hampton* court found that nothing in the constitution or section 287.495, RSMo, requires a reviewing court to view the evidence and all reasonable inferences therefrom in the light most favorable to the award. *Id.* We must determine whether, considering the whole record, there is sufficient competent and substantial evidence to support the award to Claimant. *Id.*

■ Dr. Allen, Claimant's orthopedist, saw her in December of 1996. At that time, he suspected Claimant had loose bodies in her knee. He performed arthroscopy in January of 1997 in order to relieve some of her pain. During the arthroscopy, Dr. Allen found abnormal patellofemoral function, a degenerative problem (Dr. Allen added that this condition was not *solely* caused by walking up stairs, but that walking up stairs may bother it.), and plica, for which he debrided the inside of the knee. He did not find a torn meniscus nor did he note loose bodies. He stated, however, that he did use a resecting tool that sucks tissue into it and cuts it off. So, he may have taken out loose bodies without knowing it.

In his operating note, Dr. Allen discussed cartilaginous lesions he found on the end of the femur. He testified that these lesions could be caused by a traumatic event or normal wear and tear. Dr. Allen admitted that he could not say with a reasonable degree of medical certainty whether the lesions in Claimant's knee that he found during the arthroscopy were caused by the stair-walking incident or by simple wear and tear. When asked if he could say whether any of the problems inside of Claimant's knee were acute as opposed to degenerative or developmental,

Dr. Allen stated that many of the problems were degenerative, but that he could not rule out an acute injury on top of that.

■ Dr. Allen continued to treat Claimant after the arthroscopy and, eventually, he performed a total right knee replacement on her in January of 1998. When asked if the stair-walking incident in November 1996 caused any discernable damage to Claimant's right knee that led directly to her requiring the total knee replacement, Dr. Allen responded,

Well, that's what brought her in. As we mentioned before, she had an injury of some sort at that time because something precipitated bringing her to me.... [S]ome type of trauma to her knee ... [T]o say that trauma was not responsible, I think is not correct. I think the trauma that she had added to her problem and precipitated her coming to the physician seeking help.

Dr. Allen continued by testifying that preexisting degeneration was probably the *most* significant factor contributing to the need for her total right knee replacement, but that the stair-walking incident of November 1996 was a substantial contributing factor to the change in Claimant's medical condition.[4]

Dr. Allen opined that Claimant probably would have required a total knee replacement even if the stair-walking incident had not occurred, but that "it's hard to rule out the fact that she hurt herself in '96. That's simply additive to her problem." In his opinion, the 1996 injury caused a change of condition that accelerated the need for the arthroscopy and knee replacement. When asked by Claimant's counsel if the knee replacement was part of the treatment for

---

4. Disability sustained by the "aggravation of a preexisting nondisabling condition or disease caused by a work-related accident is compensable even though the accident would not have produced the injury in a person not having the condition." *Kelley v. Banta & Stude Constr. Co.,* 1 S.W.3d 43, 48 (Mo.App. E.D.1999).

the exacerbation or aggravation that she experienced in November of 1996, Dr. Allen responded in the affirmative. Dr. Allen also opined that the work injury in May of 1997 accelerated the need for a total knee replacement.

Appellant referred Claimant to Dr. Cooper, a specialist in occupational medicine, who evaluated her on December 9, 1996. Dr. Cooper took a medical history and social history from Claimant. He also performed a physical examination. Dr. Cooper found no swelling or effusion. Claimant could fully extend her right knee and flex the knee to about ninety degrees. She did not have increased pain with rotation of the tibia on the distal femur. Dr. Cooper found it difficult to test the cartilage because Claimant felt very apprehensive about range-of-motion testing.

Dr. Cooper informed Claimant that he did not believe that her knee pain was related to her activities at work and that she would have to take care of her problem with private medical insurance. Dr. Cooper explained to Claimant that she needed to follow-up with Dr. Allen at Rusk Rehabilitation. He told her that her knee did need care and that she was unable to work in her condition. Dr. Cooper reiterated his opinion that her problem was not work-related.

During his deposition, Dr. Cooper testified to a reasonable degree of medical certainty that Claimant's employment was not a substantial factor in causing the injury in November of 1996. He opined that Claimant might have superimposed some type of strain injury on her degenerative right knee. Dr. Cooper stated that what he viewed upon examination of Claimant's knee was consistent with the ordinary and gradual degeneration of the 1979 knee injury.

Claimant saw Dr. Volarich in August of 1999. Dr. Volarich prepared a report after evaluating Claimant. Before preparing the report, Dr. Volarich performed a physical examination, reviewed Claimant's medical records, including the 1996 x-ray report, took Claimant's history, and questioned Claimant about some of her work activities. The report was admitted as an exhibit at Dr. Volarich's deposition.

In his report, Dr. Volarich stated that he based his opinion on a "clinical assessment, examination, and medical documentation." Under the section of the report entitled "Causation," Dr. Volarich opined that the work accident that occurred on November 26, 1996, the combination of the two separate incidents, was a substantial contributing factor in causing the aggravation of her right knee degenerative arthritis that required arthroscopic debridement and, ultimately, a total knee replacement. Dr. Volarich also provided some disability ratings and recommended the avoidance of certain activities.

When asked by Appellant's counsel at the deposition what he thought changed in Claimant's right knee in November 1996, Dr. Volarich responded that she experienced some stress trauma, "stress fracture to the ... condylar surface of the bone," which caused severe pain. He opined that Claimant suffered some micro-stress trauma of the knee joint. Dr. Volarich conceded that a bone scan would have been the easiest way to confirm his diagnosis of micro-stress trauma and that no bone scan was performed.

Dr. Volarich attributed the irregularities found in the condylar area of Claimant's right knee in January of 1997 to a condylar fracture suffered back in November of 1996. Appellant's counsel then asked if the problem just as easily could have been a degenerative one. Dr. Volarich responded, "It wouldn't have that kind of a grade lesion as far as I know if it is just a

degenerative problem." Counsel asked the doctor to explain his answer more fully. Dr. Volarich testified that he was not claiming that a degenerative problem could not be a grade two or grade three lesion problem. Rather, based on the shape of the knee otherwise, the menisci being intact, and the ligaments being intact, he did not think that the grade two or grade three condylar changes could be the result of wear and tear alone.

Dr. Volarich admitted that he based his opinion of Claimant's problem in part on the history she gave him. Appellant's counsel pointed out some differences in the history Claimant gave Dr. Volarich and her sworn testimony. Dr. Volarich was under the impression that Claimant experienced a pop in her right knee while squatting to make a bed back in November of 1996, then, later that same day, that her knee popped and buckled as she was walking up a flight of stairs. During her deposition in November of 1997, Claimant testified that she was merely walking around a bed she was making the first time her knee popped and that the second time it popped, while walking up the stairs, it did not collapse or buckle. When asked if Claimant's testimony would change his opinion, Dr. Volarich said he would have to discuss it with Claimant before he would revise his opinion.

In his report, Dr. Volarich concluded that Claimant's knee replacement in 1998 was related to the 1996 "popping." In his opinion, the work accident that occurred on November 26, 1996, substantially contributed to the need for the arthroscopic surgery and total knee replacement. Appellant's counsel questioned him about the medical basis for that conclusion. Dr. Volarich said that 1996 is when Claimant's symptoms flared. He mentioned that the indications for surgery for the joint replacement talked about the 1979 injury to placement talked about the 1979 injury to the right knee, the work injury in November of 1996, and Claimant's unresponsiveness to medical care. Appellant's counsel posed the question, "[I]sn't it just as likely that the problems she suffered in 1979, the surgery . . . at that time resulted simply in degeneration over time that led directly to the need for a knee replacement?" Dr. Volarich responded that the degeneration was a contributing factor, but not the only factor.

Where the opinions of medical experts conflict, the fact-finding body, the Commission in this case, determines whose opinion is the most credible. *Kelley v. Banta & Stude Constr. Co.*, 1 S.W.3d 43, 48 (Mo.App. E.D.1999). The fact finder may reject all or part of an expert's testimony. *Id.* The Commission is the sole judge of the credibility of the witnesses and the weight and value to be given to the evidence. *Minies v. Meadowbrook Manor*, 105 S.W.3d 529, 536 (Mo.App. E.D. 2003). We will not overturn its determination regarding conflicting medical opinions, unless it is against the overwhelming weight of the evidence. *Id.* After reviewing the entire record, we believe the Commission's determination, based in part on conflicting medical expert testimony, that Claimant suffered a compensable event is supported by sufficient competent and substantial evidence and is not against the overwhelming weight of the evidence. The Commission did not err in finding that Claimant's work activities were a substantial factor contributing to her injury.

Point II is denied.

### III.

In its third point, Appellant alleges the Commission erred in ordering Employer to pay Claimant's medical bills. Appellant argues the ALJ never admitted into evidence the medical bills submitted by Claimant as Exhibit D at the hearing.

We disagree. The ALJ stated, "Based upon Martin versus Mid–America Alliance [sic], certainly think that a basis for admitting Exhibit D, that's not to say ... [it] wins the day ..., but as far as the admission of Exhibit D ... I think that will be admitted." The ALJ admitted the medical bills.

Appellant notes that the ALJ commented that certain medical bills submitted by Claimant appeared unrelated to her knee injury. Appellant asserts that Employer "should not be forced to pay for medical bills that have not been found to be connected to Claimant's knee" injury. Because the ALJ denied compensation, he never made a determination as to which bills were related to the knee.

The Commission had Claimant's medical bills before it. Claimant submitted a total of $28,223.81 for medical expenses in Exhibit D. The Commission found Employer liable only for $18,470.39, a difference of $9,753.42 from the amount requested. This demonstrates that the Commission made a determination as to which bills were related to the right knee injury. Appellant does not cite to any authority that would require the Commission to list each separate expense and either specifically allow or deny it. We find that the Commission did not err in holding Employer liable to Claimant for medical expenses in the amount of $18,470.39.

Point III is denied.

## Conclusion

We find that the Commission did follow this court's mandate as set out in *Bennett v. Columbia Health Care*, 80 S.W.3d 524 (Mo.App. W.D.2002). We disagree with Appellant's contention that the Commission's determination that Claimant suffered a compensable event is not supported by substantial and competent evidence and is contrary to the overwhelm-ing weight of the evidence. Finally, the Commission did not err in ordering Employer to pay Claimant's medical bills. We affirm the award of compensation to Claimant.

LOWENSTEIN, P.J., concurs.

SMART, J., dissents in separate opinion.

JAMES M. SMART, JR., Judge, dissenting.

I dissent. In *Bennett I*, we remanded the matter to the Commission to consider "all of the pertinent issues" prescribed by section 287.020, including "substantial factor" and "proximate cause." The mandate directed the Commission to consider the nature of the claimant's job duties and the relationship between the job and the walking in question in this case. *See Bennett v. Columbia Health Care*, 80 S.W.3d 524, 531–32 (Mo.App.2002). The opinion noted that the ALJ and the Commission did not discuss any of the medical testimony. The court directed the Commission to specifically determine whether the injury was merely the natural progression of the pre-existing degeneration of the knee. *Id.* at 532.

In remanding *Bennett I*, we failed to note that the Commission, in addition to finding that the claimant's activities in walking and climbing stairs in the course of her employment were activities of everyday life to which the average person is "equally exposed outside of and unrelated to the employment in normal non-employment life," found that the injury "did not arise out of employment." The Commission thus found inferentially that the job duties were not causally related to the injury in *any* way recognized as compensable under the statute. We mistakenly concluded, however, that because the Commission was not explicit as to all issues mentioned in section 287.020, the Commis-

sion had failed to consider anything beyond the fact that the injury occurred while walking. Therefore, we remanded for the Commission to consider whether the activities of the employment were a "substantial factor" in causing her injury, *i.e.*, whether her work duties placed a peculiar or unusual stress on the claimant's knees.

In remanding this case, this court was concerned only about the principle that the mere fact that an injury occurred while walking (an activity of daily life) is not *per se* dispositive. *Id.* at 531. We were not attempting to shift the burden of proof to the employer. Our hindsight shows, however, that in remanding the case we only caused confusion for the Commission and the litigants because the Commission thought it was already clear that it had considered *all* the pertinent evidence, including the medical evidence, at the hearing. The claimant, in fact, had failed in *Bennett I* to present evidence of any kind that the job duties placed any unusual stress on her knee. The Commission had accordingly ruled that the injury did not arise out of the claimant's employment. The evidence showed that the claimant, a person with pre-existing cartilage damage and degenerative arthritis in her knee, aggravated her knee injury while merely walking at work. The evidence thus showed that the walking at work was at most a "triggering or precipitating" factor, which is insufficient under section 287.020 to create compensability.

On remand, the Commission, obviously believing that we were, in effect, shifting the burden to the employer rather than leaving it with the claimant, did in fact shift the burden, and accordingly reached a different result. The Commission misinterpreted the mandate because of confusion as to the purpose of the remand. In retrospect, it is apparent we should have affirmed the original ruling. I would concede our error in failing to affirm the first time around, and would reverse the new judgment and remand for reinstatement of the original judgment.